JOHN PAINE, Respondent, v. JAMES H. UPTON et al., Appellants.

The general jurisdiction of a court of equity to set aside or reform a contract on the ground of mistake includes executed as well as executory contracts; the consummation of the transaction, in ignorance of the mistake and without *laches* on the part of the party injured, gives the other party no immunity from making recompense, nor does it deprive the court of the power to remedy the injustice.

Where the owner of a farm innocently, but untruly, states the quantity of land contained therein, and a purchaser, in reliance upon the statement, enters into a contract and takes a deed, and subsequently discovers that the quantity is materially less than that stated, he is entitled to the interposition of a court of equity to correct the mistake.

The purchaser is not deprived of this remedy by the addition of the words "more or less" to the statement of quantity contained in the deed. These words do not import a special agreement that the purchaser takes the risk of the quantity; nor are they equivalent to a stipulation that a mistake, if one is subsequently discovered, shall not be ground of relief.

*It seems* that in the absence of any special facts and circumstances, the presumption is that in the sale of agricultural land for agricultural purposes, the element of quantity enters into the transaction and affects the consideration agreed to be paid.

At the opening of negotiations for the purchase and sale of a farm plaintiff, the purchaser, inquired as to the quantity of land; this was stated to be 220 acres and over; the gross sum originally asked was fixed by the sellers by reckoning the land at $150 an acre for that number of acres. In reliance upon this statement a contract was entered into, in which the quantity of land was stated as "about 222 acres, be the same more or less." [In pursuance of the contract a deed was delivered and accepted, in which the quantity was specified in similar terms, and plaintiff gave his bond, secured by mortgage on the farm for the balance unpaid of the purchase-money; some nine months thereafter the purchaser discovered that there was in fact but about 206 acres in the farm; up to this time all the parties believed that the representation as to quantity was true, and upon that basis the negotiations and agreement were had and executed and the deed executed and accepted.] In an action seeking an abatement from the bond and mortgage proportionate to the deficiency in quantity, *held*, that plaintiff was entitled to the relief sought.

(Argued October 12, 1881; decided January 17, 1882.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, made June 8, 1880,

which reversed a judgment in favor of defendants, entered upon a decision of the court on trial at General Term. (Reported below, 21 Hun, 306.)

This action was brought to obtain a deduction from the sum secured by a bond and mortgage given for a portion of the purchase-price of a farm, on the ground of a deficiency in, and mutual mistake as to the quantity of land.

The facts are sufficiently stated in the opinion.

*D. C. Hyde* for appellants. Plaintiff was not entitled to equitable relief on the ground of mistake. (1 Story's Eq. Jur. [4th ed.] 166; *Taylor* v. *Fleet*, 41 Barb. 96, 101, 108; *Bennett* v. *Marvin*, 8 Paige, 312.) Relief will not be granted in such a case, although the price was fixed by the acre, and there was mistake as to quantity. (*Faure* v. *Martin*, 3 Seld. 210.) If quantity of not less than two hundred and twenty acres was a condition essential to the contract in the mind of the plaintiff, he was grossly negligent, and equity will not relieve. (*Lang* v. *Warren*, 68 N. Y. 426; *Dambman* v. *Schulting*, 75 id. 55.) The contract was fully executed by the delivery and acceptance of the deed; and in the absence of fraud, equity will not relieve. (*Belknap* v. *Sealey*, 14 N. Y. 144; *Stebbins* v. *Eddy*, 4 Mason [U. S. C. C.], 414; *Beasley* v. *Beasley*, Ch. Div., 38 L. T. [N. S.] 844.)

*Theodore Bacon* for respondent. If no deed had been given, and the equities of the parties had depended upon the contract, the right of the plaintiff to have the mistake corrected would not have admitted of any question. (*Andrews* v. *Gillespie*, 47 N. Y. 490; *Gillespie* v. *Moon*, 2 Johns. Ch. 585, 596–7; *Simpson* v. *Vaughn*, 1 Atk. 33, and note; 1 Sugden on V., chap. 7, § 3, pl. 2 and 3, 369, 7th Am. from 11th London edition; 26 Wend. 186.) The acceptance of the deed constitutes no bar to the equitable right of the plaintiff to have the mistake corrected. (*Veeder* v. *Fonda*, 3 Paige, 98, 99; 14 N. Y. 152; *Quesnel* v. *Woodlief*, 2 Hen. & Munf. 173, note; *S. C.*, 6 Coll. 218; *Blessing's Adm'rs* v. *Beatty*, 1 Robt. 287; *Trip-*

*lett* v. *Allen*, 26 Gratt. 221; *Whaleys* v. *Elliott*, 1 A. K. Marsh. 65; *Gilmore* v. *Morgan*, 2 J. J. Marsh. 65; *Wiley* v. *Fitzpatrick*, 3 id. 582; *Crane* v. *Prather*, 4 id. 75, 77; *Jenks* v. *Fritz*, 7 W. & S. 201; *Bartle* v. *Vosburg*, 3 Grant, 277; *Read's Adm'rs* v. *Cramer*, 1 Green's Ch. 277; *Couse* v. *Boyles*, 3 id. 212, 216; *Twitchell* v. *Bridge*, 42 Vt. 68; *Darling* v. *Osborne*, 51 id. 148; *Tarbell* v. *Bowman*, 103 Mass. 341; *Daniel* v. *Mitchell*, 1 Story, 172; *Doggett* v. *Emerson*, 3 id. 700; *Graves* v. *Brinkerhoff*, 6 T. & C. 630; *Witbeck* v. *Waine*, 16 N. Y. 532; *Clute* v. *Jones*, 28 id. 280; *Wilson* v. *Randall*, 67 id. 338; 7 Hun, 15; *Crippen* v. *Baumes*, 15 id. 136; *Beardsley* v. *Duntley*, 69 N. Y. 577.)

ANDREWS, CH. J. We are not left in this case to ascertain the facts from the evidence, or to determine whether the evidence supports the facts found by the trial judge.

The evidence is not contained in the record, and the case comes here on the findings alone. The facts, as found, are therefore conclusively settled, and the only question is whether, upon those facts, the plaintiff is entitled to relief. The defendants, other than Mary A. Upton and Alexander Pomeroy, were owners as tenants in common, of a farm in Monroe county, formerly owned by their father James Upton, commonly known as his homestead farm. James Upton died in December, 1868. The defendant Mary Upton is his widow, and the defendant Pomeroy, is one of the executors of his will. A few weeks prior to February 28, 1872, the defendants offered the farm for sale. This led to a negotiation between the plaintiff and the defendants, for the purchase and sale of the farm. The plaintiff went upon and examined the farm, and its external boundaries were correctly pointed out to him. At the outset of the negotiation, the plaintiff asked the defendants how much land there was in the farm, and at what price they would sell it. They informed him, that the farm contained two hundred and twenty acres and upward, and that they had asked for the same, $150 an acre, but would sell it for $33,000. At the same time they exhibited to the plaintiff

a printed description, describing the farm by metes and bounds in three parcels; one parcel was described as containing one hundred and ninety-one and fifty-one-hundredths acres, more or less, another as containing thirty acres, more or less, and the third as containing one acre, making in the aggregate two hundred and twenty-two and fifty-one-hundredths acres. The plaintiff declined to purchase the farm at the price fixed by the defendants, but made a counter-offer of $30,000, which the defendants declined. But on the 28th of February, 1872, the negotiation was concluded by an agreement for the sale of the farm to the plaintiff, for the sum of $31,687, and written articles were entered into between the parties, in which the farm was described in general terms, as the homestead farm of the late James Upton, on the lots named, "containing about two hundred and twenty-two acres of land, be the same more or less." The articles provided, that the purchaser should assume a mortgage on the premises, and pay the balance of the purchase-money in installments, and secure the part which should remain unpaid at the time of the execution of the deed, by his bond and a mortgage on the premises. The deed was to be executed April 2, 1872, and was executed and delivered at that date, and at the same time a mortgage was executed by the plaintiff, as provided in the articles. The deed described the farm, in three parcels, as in the printed description exhibited to the plaintiff.

The plaintiff, on the purchase of the farm, took possession, and has ever since occupied it. About nine months after the deed was given, his suspicion was excited of the accuracy of the representation of quantity, made by the defendants, and upon investigation it was ascertained that the farm, instead of containing two hundred and twenty acres and upward, contains only two hundred and six and thirty-five-one-hundredths acres, there being a deficiency, in reference to the quantity which the defendants represented it to contain, of more than thirteen acres, the value of which, at the average price per acre paid for the farm, upon the assumption that it contained two hundred and twenty acres, would be $1,953.93.

The trial judge found, that all the parties believed, during the negotiation for the sale of the farm, and at the time of executing the contract and deed, and until about nine months after the making of the deed, that the farm did in fact contain two hundred and twenty acres of land, and upward, and that such nego. tiation and agreement were had and executed on both sides, upon the basis of such common belief and understanding, and that all the parties were mutually mistaken in the belief that the farm contained at least two hundred and twenty acres. The judge further found, that James Upton, prior to 1865, owned and occupied as part of his homestead farm, the first parcel described in said deed, and also another parcel adjoining it, of about twenty acres, making together one hundred and and ninety-one and one-half acres. In that year he sold the small parcel. After his death the unsold part was mortgaged as containing one hundred and ninety-one and one-half acres, and the mistake was perpetuated in the subsequent descriptions of the farm.

The precise question presented is, whether, upon the facts found, the plaintiff is entitled to an abatement from the bond and mortgage given for the purchase-money, proportionate to the deficiency of acreage, in the farm.

It is to be observed, that the facts affirmatively show a mutual mistake of the parties, in respect to the quantity of land, which commenced with the commencement of the negotiation for the sale of the farm, and pervaded the whole dealing from that time, until the transaction was consummated, by the giving of the deed, and the execution of the mortgage. This mistake, moreover, was as to an essential and material element of the contract. In the absence of any finding of special facts and circumstances, the natural presumption is, that in a sale of agricultural land, the element of quantity enters into the transaction, and affects the consideration agreed to be paid. But in this case it is plain, that the representation of quantity, was deemed material by the parties. The sale was perhaps not technically, a sale by the acre. But the starting point of the negotiation was an inquiry by the pur-

chaser, as to the quantity of land in the farm, and the gross sum originally asked was fixed by the sellers, by reckoning the land at $150 an acre, not counting any surplus there might be, over two hundred and twenty acres. The price finally agreed upon was also fixed upon the supposition that the farm contained at least two hundred and twenty acres. This is a necessary inference from the finding, that the parties acted upon the assumption that the farm contained that number of acres, and that the contract was made and executed upon this basis. It is also very material, that the misconception under which the plaintiff labored in respect to the number of acres, was induced by the untrue, although not fraudulent, representation of the defendants.

Leaving out of view for the present, the words *more or less*, in the contract, and looking at the contract as still executory, and as if these words had been omitted, the facts found would present a clear case for the interposition of equity. The case of *Hill* v. *Buckley* (17 Ves. 394) is a leading case on the subject, and has been repeatedly referred to with approval. It was a bill filed by a vendee, against a vendor, for specific performance of a contract for the sale of land for a gross sum, with an abatement for deficiency in the number of acres, stated in the contract. The relief was granted, upon equitable terms, and in the course of his opinion the master of rolls (Sir WM. GRANT) said: "When a misrepresentation is made as to quantity, though innocently, I apprehend the right of the purchaser to be, to have what the vendor can give; with an abatement out of the purchase-money for so much as the quantity falls short of the representation." And he adds, "that is the rule generally; as, though the land is neither bought nor sold professedly by the acre, the presumption is, that in fixing the price regard was had on both sides to the quantity, which both suppose the estate to consist of." But the right of a purchaser, under such a contract, to have a corresponding abatement of the purchase-money, exists as well after the execution of the deed, as before, where the mistake was not known, when the deed was executed. This relief has

been frequently granted. (*Shovel* v. *Bogan*, 2 Eq. Cas. Abr. 688; *Quesnel* v. *Woodlief*, 2 Hen. & Mumf. 173, note; *Couse* v. *Boyles*, 3 Gr. Ch. 212; *Darling* v. *Osborne*, 51 Vt. 148.) The court, in granting such relief, does not make a new contract for the parties, but simply conforms the nominal agreement to the real one. The vendor cannot, in justice, be permitted to defeat the vendee's right to a reformation of the contract, or to an abatement from the purchase-money by the plea, that if he had known of the deficiency, he might, nevertheless, have exacted the same price. When the quantity is an essential element of the contract, the presumption is, as stated by Sir WM. GRANT, that the price was fixed by both parties with reference to it, and in this case it is a reasonable presumption, that if the true quantity of land had been known, the purchase-price would have been reduced by an amount corresponding with the deficiency in the land.

The contract in this case, is distinguishable from the one in *Hill* v. *Buckley*, in the circumstance that the words *more or less*, annexed to the statement of quantity, and it is a pertinent inquiry, whether if the contract was still executory, the introduction of these words would defeat the right of the plaintiff to relief, notwithstanding the conceded misrepresentation of the defendants, and the mutual mistake of the parties, as to the quantity of land. We are relieved from the necessity of examining the authorities elsewhere, with a view of determining whether under such circumstances the presence of these words, in an executory contract for the sale of land, is a bar to equitable relief, by the decision of this court in *Belknap* v. *Sealey* (14 N. Y. 143). It was there held that the introduction of the words, *more or less*, following the enumeration of the number of acres, was no obstacle to relief in equity, upon the ground of mistake. The authorities in this State, were carefully reviewed in the able opinion of COMSTOCK, J., and it was satisfactorily shown that the cases supposed to have a bearing adverse to this view, were of two classes: *first*, cases where the question was one of construction purely,

in a court of law, and not one of mistake in a court of equity, and *second*, cases where relief was denied on the ground that it appeared from the words *more or less*, and the extrinsic circumstances, that the risk of the quantity was one of the elements of the contract. The court said, that those words, in a contract or conveyance of land, do not import a special engagement that the purchaser takes the risk of the quantity, and that while their presence may render it more difficult to prove such a mistake as will justify the interference of equity, they are not equivalent to a stipulation that the mistake, when ascertained, shall not be ground of relief. The conclusion in *Belknap* v. *Sealey*, is founded, we think, upon the most obvious equity. It is not a satisfactory answer to the claim for relief, against a mistake in the quantity of land contracted to be sold, embraced within given boundaries, to say that the statement of the number of acres, is mere matter of description. It is true that such a statement, following a description by boundaries, does not amount to a covenant that the land contains that quantity, but it is quite another question whether equity will not relieve a purchaser when both parties supposed the statement to be true, and the bargain was made upon that belief — and it turns out that the quantity is less — and the mistake materially affected the consideration. It was said in *Belknap* v. *Sealey*, that the primary purpose of these words is to indicate that all the land within the boundaries specified, is included in the contract or deed, and is intended to pass to the purchaser. They are also intended to cover small discrepancies between the actual quantity, and that stated in the contract or deed, and no inference of mistake would arise from a small discrepancy merely. But where the difference is material, and the mistake is confessed, or satisfactorily proved, there would seem to be no violation of principle in granting relief. It must, be conceded, upon the authority of *Belknap* v. *Sealey*, that if the contract for the sale of the farm in question was still executory, the plaintiff, upon the facts found, would be entitled to equitable relief.

The point remaining to be decided is, whether the acceptance of the deed, and the giving of the bond and mortgage, barred the antecedent right of the plaintiff, to have the mistake corrected. It cannot be denied that this claim finds some support in the observations of judges; but no case has been called to our attention, nor have we found any, where the point has been so adjudged. The suggestion in some of the cases, that by the acceptance of a deed containing the words, *more or less*, or, by *estimation*, in connection with the statement of quantity, the purchaser is concluded from obtaining relief on the ground of mistake, appears to have been founded upon an inference from the language used in Sugden on Vendors (Vol. 1, p. 526). The distinguished author of that work, referring to the general subject, says: "Where the contract rests *in fieri*, the general opinion has been, that the purchaser, if the quantity be considerably less than it was stated, will be entitled to an abatement, although the agreement contain the word, *more or less*, or *by estimation*." It will be perceived that the writer does not say, that after a conveyance, such relief cannot be granted, but the language has been sometimes regarded as implying this. It seems to us, however, that this is a misconception of the author's meaning. In the paragraph preceding the one quoted, the author had stated, that "where the lands *in a conveyance*, are mentioned to contain so many acres *by estimation*, or the words *more or less*, are added, if there be a small portion more than the quantity, the vendor cannot recover it; and if there be a small quantity less, the purchaser cannot obtain any compensation in respect of the deficiency." This language clearly implies, that in case of a considerable and material discrepancy in quantity, relief could be had, after a conveyance. The paragraph just quoted, is followed by a reference to a case referred to in the *Anonymous Case* (2 Freeman, 107), in these words: "A case is said to have been decided, where a man conveyed his land by the quantity of one hundred acres were it more or less, and it was not above sixty acres; but the purchaser had no relief, because it was his

own *laches.*" This language, is immediately followed by the language first quoted, upon which the defendants rely to establish the proposition, that relief against mistake as to quantity, when the words *more or less*, or equivalent words are used, can only be granted before a conveyance, and when the contract of sale is *in fieri.* Mr. Sugden, as will be noticed, uses very guarded language in referring to the case cited in Freeman, speaking of it as a case *said* to have been decided, and Judge STORY, in *Stebbins* v. *Eddy* (4 Mason, 418), referring to the same case, remarks, that Mr. Sugden thinks the case open to much observation. The case is doubtless in conflict with many authorities in holding that the words *more or less* covered so large a deficiency. The statement by Mr. Sugden, in the subsequent paragraph, that the general opinion was that relief could be granted where the contract was *in fieri*, was not, we think, intended to imply that in his opinion, relief could only be granted before a conveyance; but was designed, by bringing into view the principle upon which courts proceed in respect to contracts to convey, to discredit the doctrine of the unreported case immediately before referred to, in which the conveyance had been executed.

Considering the question on principle, we can perceive no solid ground for affirming the jurisdiction of a court of equity in the one case, and denying it in the other. The general jurisdiction of a court of equity to set aside, or to reform written instruments, in cases of fraud or mistake, is not limited to executory contracts. Such a limitation, as was said by ROBERTSON, Ch. J., in *Harrison* v. *Talbot* (2 Dana, 258), would be irreconcilable with an obvious and pervading principle of justice. It is doubtless true that the annulling or reforming of executed transactions, is an exercise of supreme judicial power. The power should be exercised with great caution, and when invoked on the ground of mistake, a plain case should be made, before it is exerted. But these are considerations which address themselves to the chancellor, in the exercise of the jurisdiction; they ought not to prevent the interference of equity when the proper occa-

sion for interference arises. The granting or refusing of equit-
able relief on the ground of mistake may depend, to some ex-
tent, on the fact whether the contract is executory or executed.
The court might very well refuse the specific performance of
a contract for the sale of land, in respect to which a mistake
is alleged, and leave the party to his remedy at law, when it
would not interfere, if the contract had been executed. But
it cannot, we think, be maintained upon principle, that where
a mistake is admitted, or proved, the fact that the title has
passed, and the purchase-money has been paid or secured, pre-
cludes the court, on the mistake being discovered, from grant-
ing relief. The consummation of the transaction in ignorance
of the mistake, without *laches* on the part of the party injured,
gives to the other party no immunity, from making recompense,
nor does it deprive the court of the power to remedy the injus-
tice. In this case no *laches* can be imputed to the plaintiff.
He could not ascertain the mistake, from seeing the exterior
boundaries of the farm, and he had a right to rely upon the
representation of the defendants. The cases of (. . . . . *v.*
*Woodlief* (2 Hen. & Mumf. 173) and *Darling v. Osborne* (5
Vt. 148) are direct authorities in support of the conclusion
we have reached, and it is also supported by the case in this
court of *Wilson* v. *Randall* (67 N. Y. 338).

The order of the General Term should be affirmed, and the
plaintiff should have judgment absolute on the stipulation.

All concur.

Order affirmed and judgment accordingly.