JOHN COAST and Others, Appellants, *v.* JOHN McCAFFERY, Respondent.

*Lease of premises said to contain "fifty acres more or less" — when not reformed because there are but thirty-four acres.*

The fact that premises described in a lease as containing "fifty acres more or less," prove to contain but thirty-four, does not entitle the lessees to a reformation of the instrument and to recover a proportionate part of the consideration, where it appears that the lease was taken upon speculation in the belief that the premises might prove to be oil-bearing territory; that before taking the

lease, which was not by the acre but by the piece, the lessees inspected the premises and were shown the boundaries, which were clearly defined; that the lessors did not state the number of acres, but simply said that there must be forty-seven and a half or fifty-two and a half acres, and that, although the lessees discovered the deficiency within ten days after the execution of the lease, they made no complaint until after the test for oil had been made, some six months subsequently.

APPEAL by the plaintiffs, John Coast and others, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Cattaraugus on the 1st day of March, 1899, upon the decision of the court rendered after a trial at the Cattaraugus Special Term.

This action was brought to reform a written instrument whereby the plaintiffs leased of the defendant a tract of land in the town of Carrollton, in the county of Cattaraugus, " for the purpose of operating and drilling for petroleum and gas." The term of the lease was to be for fifteen years from its date, " and so long thereafter as oil or gas can be produced in paying quantities." The consideration, which was paid in cash, was $10,000, and the land leased, which comprised the farm of the plaintiffs, was thus described in the lease : " Bounded on the north by lands of Barnard and Charles McCaffery ; on the east by the lands of Chipmunk wagon road ; on the south by the lands of Chipmunk creek ; on the west by the lands of Barnard and Charles McCaffery, containing fifty acres, more or less."

While the description purports to contain " fifty acres, more or less," the quantity actually passed by the written instrument was only about thirty-four acres. The allegations in the complaint were that the defendant represented there were fifty acres in the tract, and that the plaintiffs were induced to purchase in reliance upon this representation. There was no averment of fraud or, in terms, of mutual mistake. The plaintiffs claim the land was leased at $200 per acre, and seek a reformation of the contract to include the actual quantity leased, and for judgment against the defendant for $3,200.

*C. S. Cary,* for the appellants.

*Thomas H. Dowd,* for the respondent.

FOURTH DEPARTMENT, DECEMBER TERM, 1899.     [Vol. 46.

SPRING, J.:

The land in controversy comprised a cultivated, cleared farm, but its value at the time of this agreement was enhanced by reason of the prospect of discovering petroleum underneath its surface. The plaintiffs leased for speculation; if oil was found in paying quantities the venture would be profitable. If they failed in this hazardous experiment, their lease would be valueless, and the outlay incurred in the development a loss. The quantity of the land was not the inducing motive for the lease; but the belief that it was within the "oil belt," and the probability that it contained petroleum, inspired the investment by the plaintiffs.

There is no claim that the defendant made any fraudulent representations in respect to the quantity of the land. The contention is that the defendant stated there were either forty-seven and one-half or fifty-two and one-half acres, and that plaintiffs relied upon that statement.

Before the instrument was executed the plaintiffs went upon the land; they were experienced in the oil business and familiar with the locality. The boundaries of the defendant's farm were clearly defined; one side by a creek, on another by a highway, on the other two sides by a farm, one of which was indicated by a fence and the remaining one by stakes. The elder Coast went around these boundaries; they were visible to any one. Plaintiffs concede they were honestly pointed out to them before the lease was made. The elder Coast testified: "I think we went up the Chipmunk road far enough, so that McCaffery showed me where the line of the South Penn lease crossed the road. I don't know but what McCaffery pointed out stakes driven at that point. That was the only line on that lease that was not plainly marked. On the other three sides it was bounded by the creek, by Barney and Charlie McCaffery's line with a fence on it, and by the highway, and he indicated where the stakes of the South Penn field was. * * * All of it level, so it could be plainly seen. I guess I got under that lease all of the land included within the boundaries. * * * I think I walked over this land more than this once with McCaffery, but don't know whether I went over the land with anybody else or not. On the day following the day I went over it with McCaffery I went down there with my son William. I think that day William, Charlie

McCaffery and I walked along by the creek; we didn't go all over it, but we went at least over a part of it.   *   *   *   William was one of my firm at that time, and is a plaintiff in this lawsuit.   He and I were there looking to see where the boundaries were; that is what William and I were doing there that day." The defendant did not state the number of acres in the tract, even according to plaintiffs' version, but said there must be forty-seven and one-half or fifty-two and one-half acres, clearly indicating that he did not know the precise number.    The plaintiffs got the land they purchased; they understood where every boundary line was, and the land within those established lines they acquired by their lease.    There is no claim of any encroachment upon this tract now.   The contention is, while the tract was unmistakable, that it fails on a survey to show the requisite number of acres.

Again, there was no lease by the acre; as the elder Coast stated: "McCaffery said he wanted $10,000 for that piece.   I don't think he ever told me he wanted $200 an acre for the piece."

The defendant denies there were any representations whatever as to the quantity of the land.   It is a fair deduction, however, from the evidence, that each party supposed there were about fifty acres of land, yet there was no statement that this was the quantity.   On the contrary, the evidence shows unmistakably that the plaintiffs leased the tract and the piece within those limits and paid a gross sum for it.   This is confirmed by the fact that even while the negotiations were in progress the plaintiffs were having this land, with other tracts, surveyed, and within ten days after the execution of the lease knew there were only thirty-four acres obtained from the defendant.   They were on this land daily, the defendant resided upon it, their relations were friendly, and yet there was no intimation there had been any mistake committed or any representations made in respect to the quantity of the land until six months later.   It was not until after the test for oil had been made, and, perhaps, failed to meet the sanguine expectations which induced the purchase, that the objection was raised that the tract did not contain the requisite number of acres.

Courts are chary in reforming written contracts.  The doctrine is thus stated in Pomeroy's Equity Jurisprudence (Vol. 2 [2d ed.], § 859): " The authorities all require that the parol evidence of the

mistake and of the alleged modification must be most clear and convincing — in the language of some judges, ' the strongest possible ' — or else the mistake must be admitted by the opposite party ; the resulting proof must be established beyond a reasonable doubt. Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of evidence, but only upon a certainty of the error." Also in *Christopher St. R. R. Co.* v. *Twenty-third St. Ry. Co.* (149 N. Y. 51, 58) : " The grade and degree of proof required to entitle a plaintiff to relief of this character has been many times considered by the courts of England, the Federal and the various State courts of the United States, and their decisions as to the nature of the proof required show that it must be of the most substantial and convincing character." The plaintiffs rely upon *Belknap* v. *Sealey* (14 N. Y. 143). In that case the complaint charged that the plaintiff was led to purchase the land by the false and fraudulent representations of the defendant as to the quantity of the tract. The trial court found there were no fraudulent representations, but granted the relief sought on the ground that the parties acted under an innocent mistake, and no proper objection was raised on the trial to diverting the case to this issue. The land was in the city of Brooklyn, valuable only to be cut up into city lots, and the quantity was only half that included in the deed and which was stated to be " about nine acres, more or less." The contract was executory, and it was apparent that the quantity was materially less than the vendee believed he was purchasing, and that he would not have entered into the agreement at the stipulated price had he known the true number of acres in the tract. In *Paine* v. *Upton* (87 N. Y. 327) the vendor represented in distinct terms that his farm contained upwards of 220 acres, and the price fixed was $150 per acre, and the court allowed an abatement from the purchase price, to the extent of the deficiency, at the stipulated sum per acre.

In this case the title to the fee still remained in the defendant, and the plaintiffs only obtained a servient interest for the speculative purpose of boring for oil, and the probability of realizing on that hope fixed the value, not the quantity of the land. While the value was fictitious and shifting the proof shows that the land did temporarily possess this augmented worth for oil purposes. The

defendant made no representations and suppressed no fact. Whatever he knew the plaintiffs knew — or at least possessed ample opportunity to ascertain. The vendees purchased after a full inspection, and cannot now, by the aid of a court of equity, make a new contract because, perhaps, they failed to gauge accurately the value of this land as oil-bearing territory.

The judgment is affirmed, with costs.

All concurred.

Judgment affirmed, with costs.