## NEAGLE v. HUDSON.

(Supreme Court, Special Term, Chemung County. December 3, 1913.)

1. VENDOR AND PURCHASER (§ 343*)—BREACH OF CONTRACT—RIGHT OF ACTION.

The purchaser under a land contract, which provided that the title to be conveyed should be "free and clear of all liens," could maintain an action for damages for breach of the contract by the existence of an outstanding lease by vendor, binding him to sell to the lessee on demand free from all incumbrances, and of a recorded agreement by a prior owner with adjacent owners that only a one-story building should be erected on a part of the property.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1023–1029; Dec. Dig. § 343.*]

2. VENDOR AND PURCHASER (§ 134*)—"LIENS"—DEFINITION—BREACH OF CONTRACT.

A previously executed lease by the vendor, entitling his lessee to purchase the premises on demand free from all incumbrances, and a recorded

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

agreement made by a prior owner of the property with adjacent owners that only a building one story high should ever be erected on a part of the lot, constituted a "lien" within the meaning of a land contract executed by such vendor, which provided that the title conveyed should be "free and clear of all liens"; the parties having showed by their acts that they recognized the lease and building restriction as incumbrances, and a "lien" being defined as "a technical term that means a charge upon lands, running with them, incumbering them, in any change of ownership, as mortgages, judgments, ground rents," etc. (quoting and adopting Words and Phrases, vol. 5, pp. 4145, 4146. See, also, volume 8, p. 7707).

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 238, 250-254, 258; Dec. Dig. § 134.*]

3. VENDOR AND PURCHASER (§ 350*)—BREACH OF CONTRACT—ACTION FOR DAMAGES—SUFFICIENCY OF EVIDENCE.

Evidence, in an action by the purchaser of land under a contract which provided that the title should be clear of all liens, held to show that the parties to the contract recognized a lease, with an option to purchase, and a building restriction contract executed by a former owner as incumbrances upon the property.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1043-1046; Dec. Dig. § 350.*]

4. PLEADING (§ 237*)—AMENDMENTS—CONFORMITY TO PROOF.

An action in equity should not fail because of defects in the allegations of the complaint, so that the proof does not conform thereto, but an amendment will be allowed under Code Civ. Proc. § 723, if necessary to conform the pleading to the proof.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 603-619; Dec. Dig. § 237.*]

5. VENDOR AND PURCHASER (§ 351*)—NOMINAL DAMAGES—BREACH OF CONTRACT—SALE OF REAL PROPERTY.

The purchaser of land under a contract to convey title free from all liens is entitled to recover more than nominal damages for its breach by the existence of an outstanding lease by the vendor which bound him to convey the premises on demand free from incumbrances to the lessee at any time during the term of the lease.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1017, 1047-1058; Dec. Dig. § 351.*]

6. VENDOR AND PURCHASER (§ 350*)—BREACH OF CONTRACT—ACTIONS—SUFFICIENCY OF EVIDENCE.

In an action for breach of a contract to convey land free from all liens, in which it appeared that, after the contract was executed, the purchaser discovered that there was a recorded contract, executed by a previous owner with adjacent owners, limiting buildings erected to one story, evidence held to show that it was the intention of both vendor and purchaser that the purchaser should be relieved from such restriction on the lot before the vendor's performance of the contract was considered complete.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1043-1046; Dec. Dig. § 350.*]

7. VENDOR AND PURCHASER (§ 345*)—BREACH OF CONTRACT—WAIVER.

The purchaser under a contract to convey land clear of all liens did not waive his right to damages for breach of the contract, by the existence of an outstanding recorded agreement by a former owner with adjoining owners that only a one-story building should be erected on part of the lot, by accepting a deed from the vendor under an understanding that the restriction should be removed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1036-1038; Dec. Dig. § 345.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Patrick J. Neagle against Adelbert Hudson. Judgment for plaintiff.

John F. Murtaugh, of Elmira, for plaintiff.
H. H. Rockwell, of Elmira, for defendant.

KILEY, J. This action involves the sale of real estate from defendant to plaintiff, known as No. 329 East Water street in the city of Elmira. After negotiations had the defendant gave to the plaintiff a land contract, which was drawn by the plaintiff, who is not a lawyer, bearing date October 29, 1912, and provides, among other things, that the purchase price was to be $16,000, $3,000 to be paid in cash at the delivery of the deed, and a mortgage of $13,000, for the balance, payable in five years; it also contains the following clause:

"Title to be free and clear of all liens and warranty deed to be given with county clerk's search."

Subsequent to the execution and delivery of this contract to the plaintiff, a search with a proposed deed, on behalf of the defendant, was presented to the plaintiff by Cassius A. Phillips, in which search he designated himself as official examiner of the title. Upon the search a map of the premises in question and surrounding premises is attached. This map discloses that the property which defendant agreed to convey to plaintiff was about 94 or 95 feet deep, and about 23 feet wide at the front on East Water street, and that for a distance of about 30 feet on the rear of said premises there was marked thereon that it could not be built over one story in height; also attached to the search was a contract, showing that the defendant in this action had theretofore rented said premises to the Hudson Shoe Company for a period of five years, said lease to commence March 8, 1911, and to end March 7, 1916, which, among other things, provides that this defendant, at the expiration of said term, or at any time previous thereto, will sell to said lessee the property rented by a good and sufficient warranty deed "free and clear from all liens and incumbrances," for the sum of $17,000, and that the lessee must give notice in writing, or otherwise, to the defendant of its desire to exercise this option, and deposit a payment of $1,000 thereon; provides, also, that the lessee shall not assign the lease, or sublet the premises, without the consent in writing of the defendant, who was the lessor in said lease, and that the defendant herein would not sell the premises during the said term of five years except he made the sale to the party of the second part in the lease, being the lessee named therein.

The search, presented to the plaintiff with the deed aforesaid by said Phillips, also contained an agreement in writing, dated June 13, 1871, and recorded in Chemung county clerk's office, between the then owner of the premises in question and the surrounding owners, in and by which it was provided, among other things, that 30 feet of the rear lot upon which the building in question stands should not be built upon higher, or to exceed the heights of one story, and previous to the negotiations herein concerned said portion of the lot was built upon to the extent of one story, and no more. In the deed presented by said

Phillips with said search, this agreement was referred to. The plaintiff rejected said deed, claiming that he was to have the premises free and clear of all liens and incumbrances, designating this contract restricting the building as an incumbrance, also claiming the lease, which had about three years to run, was an incumbrance and restriction upon his rights, and that the removal of both of them was contemplated by his contract. So it appears that at that time, which was after the execution and delivery of the contract by the defendant to the plaintiff, both parties were cognizant of the conditions existing; in one instance the prohibition not to build to exceed one story in height on the rear of the 30 feet of said lot, and the other that the lease theretofore given by defendant to the Hudson Shoe Company, providing for a sale to them and nobody else, and the carrying out of the provisions of that contract, which contract also provided that its terms "shall be binding also upon the heirs, successors, administrators and assigns of the parties." Subsequent to the refusal of the plaintiff in this action to accept the deed as prepared by said Phillips as complying with the contract, he, the plaintiff, had prepared a warranty deed of the premises, making no reference to the lease or the contract prohibiting the building on the rear of the lot upon which the premises now stand. With that deed plaintiff went to defendant, and in effect asked him to give him a deed in accordance with his contract—the contention of the plaintiff being that these were liens on the property; that he was to have a title free and clear. The defendant and his wife executed that deed and delivered it to the plaintiff, and plaintiff claims agreed, in accordance with the contract, to have the lease canceled; the prohibition as to the building removed, and permission given to the plaintiff to build upon the rear of said lot. The $3,000 was paid, and the mortgage given as in and by said contract provided. After repeated requests by the plaintiff made upon the defendant, as appears from the correspondence passing between them, the defendant failed and neglected to either have the prohibition removed or permission to build given, or to have the lease canceled, and the plaintiff then brought this action, asking for judgment against the defendant for damages by reason of the existence of said lease, which he claims is for less than the rental value of said premises, and for damage on account of the prohibition to build, on record against the said property, and that the amount so found be used in the reduction of the purchase price of said premises, or, in other words, the abatement of the purchase price to the extent of said damages.

The answer of the defendant raises several defenses; first to be considered is that the action cannot be maintained upon the ground that the plaintiff, in accepting the deed given and giving the mortgage, waived all defense there might be in the title and in effect became the landlord of the Hudson Shoe Company, and that therefore he has no standing before the court entitling him to relief. In other words, that his action would have to be for a breach of warranty in the deed, and as he has not been disturbed in the possession, he has no cause of action.

[1] I am of the opinion that the plaintiff can maintain this action, providing the facts warrant it, under a line of cases in this state, upon the contract of October 29, 1912, for the nonperformance of portions of said contract to give him a title "free and clear of all liens," as the deed itself is unconditional and makes no reference to that portion of the contract which, if the plaintiff's contention is right, is still unperformed. Paine v. Upton et al., 87 N. Y. 327, 41 Am. Rep. 371; Gallup v. Bernd, 132 N. Y. 370, 30 N. E. 743; Mills v. Kampfe, 202 N. Y. 46, 94 N. E. 1072; Disbrow v. Harris, 122 N. Y. 362, 25 N. E. 356.

[2] The defendant also contends that the word "lien" used in the said contract between the said plaintiff and defendant does not cover the prohibition to build involved in this case, nor the lease to the Hudson Shoe Company. The word "lien" is of such broad application that in some cases the intention of the parties cover the construction that shall be placed upon it. In the work on "Words and Phrases," vol. 5, pp. 4145, 4146, we find the meaning given to the word indicated by the following:

" 'Lien' is a technical term that means a charge upon lands, running with them, incumbering them, in any change of ownership, as mortgages, judgments, ground rents," etc.

"A lien is a special right which one has in that of which another has the general property, and to the extent of the lien it is an abridgement of the dominion which the latter has in the thing. From its nature, therefore, a lien can only be created by the consent of the party who has the general property, or by operation of some positive rule; or, in other words, it can only exist where the person having absolute dominion of the thing has so far voluntarily parted with his right, or it has been taken from him without his consent."

"The word 'lien' has a well-known signification. In law it signifies an obligation, deed, or claim, and annexed to or attaching upon any property, without satisfying which, such property cannot be demanded by its owner."

[3] In addition to the foregoing we find from the evidence that the defendant must have recognized both of the instruments above referred to as incumbrances upon the property. With reference to the lease he swears that he was to have it canceled, and adds that the plaintiff was to stand in his shoes. This is from the testimony of the defendant, showing that he recognized the lease had some effect upon the title he was about to convey to the plaintiff. Again, on December 11, 1912, he wrote a letter to the plaintiff in which he said:

"I have been waiting for Charlie to get around from his illness to get the lease and permit fixed up."

The plaintiff swears that he said, with reference to the prohibition to build, that he had built a stairway there, and that no one objected, and that he would get it released, and at the time he delivered the money and the mortgage for the property, that he made that statement, and that he, the plaintiff, delivered the deed and mortgage relying upon the promise of the defendant to obtain those releases. Phillips, the witness who went to the house and store when the deed was executed, testified that something was said about the Arnots, who are one of the parties involved in the prohibition agreement.

[4] I think enough appears in this evidence to show that both parties regarded these two contracts which appear upon the search, as incumbrances, and that the word "lien," used in the contract of October 29, 1912, between the parties, covers the incumbrance, and I have no hesitation in holding that that was the understanding of the parties at that time. The defendant answers that proposition by saying that the allegations of the complaint are insufficient for the introduction and consideration of evidence upon this branch of the case, that it is not alleged, and therefore cannot be proved, and that a judgment rendered by any court must be secundum allegata et probata. It is an action in equity, and should not fail because of some defect in allegation in the complaint. An amendment will be allowed, if necessary, under section 723 of the Code of Civil Procedure, but I think the complaint is broad enough to permit the evidence and consideration thereof under this branch of the case.

The defendant contends, further, that if it should be found that the plaintiff was entitled to damage, it could only be nominal damage. Evidence was given upon the trial to the effect that the rental value now obtained is a fair rental value, and that the prohibition as to building above one story upon the rear of said lot was not detrimental, and by some witnesses that it was beneficial. The plaintiff contends that the options contained in the lease are a great hardship and damage, and that if he is compelled to carry them out by having to take this property at the full purchase price, and if the lessee should call, upon him later to fill, he could not give a clear title, and that by reason of the noncancellation of the lease he is compelled to accept less rent for three years than his property is worth.

As to the first proposition, I think that will have to be decided when it is reached, if it is reached.

[5] As to the second proposition, under this lease I think he is entitled to some damage if the defendant cannot procure its cancellation; and, after examining the evidence, I am of the opinion that $100 a year from the time he took the property by virtue of the deed will cover his damage.

[6] I also feel that the plaintiff suffers substantial damage by reason of the restriction placed upon the property, and I think the evidence fairly shows that it was the understanding and intention of both parties that the plaintiff should be relieved from that restriction. The correspondence carried on after the delivery of the deed and before the commencement of the action indicates that the plaintiff thought, and the defendant conceded, that there was a restriction there. In the letter of December 11, 1912, the defendant speaks of fixing these matters up, and uses the words "permit and lease." I fail to see what the word "permit" can refer to, unless it was a permit to build above the one story. Again, on November 7, 1912, the defendant writes the plaintiff:

"Yours of yesterday received, I shall be very glad to fix up this lease and contract as agreed, ready and anxious to meet you at any place and at any time."

The references made by the plaintiff to the defendant has considerable bearing upon what the knowledge of the defendant was; it seems that after giving this mortgage, which provided he could pay up sooner than the five years if he desired, he had negotiated with a bank in Rochester to get a loan at 5 per cent. to replace this mortgage, which bore an interest rate of 6 per cent., and that he called the attention of the defendant to the fact that the condition of the title was not such that he could close the negotiations. Again, the plaintiff contends that if, as claimed by the defendant, he was to step into the defendant's shoes with reference to this property, there was no necessity for the concellation of the lease; no necessity for any discussion as to the prohibition as to building on the rear of the lot.

I am led to the irresistible inference that the defendant and the plaintiff discussed those matters, and that the plaintiff accepted the deed, delivered the mortgage and the money paid upon the purchase price, understanding that the defendant would have removed these restrictions and incumbrances, and that the defendant so understood it. The evidence shows that up to the time of the signing of the deeds the parties had not personally met; that negotiations were through a third person, and the defendant meant to have released the burden that existed upon the property which he was selling, and which would continue to exist in the hands of the man who might desire to improve it so as to get a greater revenue out of it, but he was bound to know that the condition of the property he was selling fulfilled, or would fulfill, the representations and covenants made by him in the contract of sale. I do not think that the defendant fraudulently intended to deceive the plaintiff. I think that he believed that there would be no difficulty in removing these restrictions, feeling assured of it in his own mind, that he so assured the plaintiff, but that he was mistaken in his ability to remove these restrictions, and that he represented a condition to exist which, in fact, did not exist, and that he subsequently found he could not provide for its existence, viz., the removal of these restrictions.

[7] The importance of a clear and unrestricted title, for which a man payed $16,000 cannot be minimized, and a restriction such as contained in the prohibition with reference to the rear of this lot may become a great damage; be it great or little at this time the plaintiff should not be held to have waived his right to damage by accepting the deed under the conditions existing and as shown by the evidence.

Having reached the conclusion that the plaintiff suffered damage, the question is, How much? Plaintiff contends that at least $3,000 damage is sustained by him. Evidently that is based upon evidence that the building without the restriction as to going above one story on the 30-foot plot at the rear of the lot is worth $16,000, and with the restriction on is worth only $13,000. In other words, a fair deduction from the evidence would be that the space of air and blue sky above the first story on the 30-foot plot on the rear of the lot would be worth nearly one-fourth as much as the whole building is with the restriction upon it. I cannot reach that conclusion, and think, taking

everything into consideration, as appears from the evidence, and from a view of the parts affected by the restriction, that $1,500 is a fair sum to be awarded to the plaintiff.

Findings may be prepared in accordance with the previous intimation herein as to the damage upon the lease, and as to the restrictions that the defendant may procure the cancellation of the lease; may procure the restriction as to building on the rear of the lot to be removed and pay the costs of this action, or upon his failure or inability. to do so, that he pay to the plaintiff the damage at the rate of $100 a year from the date of the deed to the termination of the lease, and $1,500 damage by reason of the restrictions upon building upon the rear of said lot, and that said sum may be applied in abatement of the mortgage now upon said premises, and that the plaintiff have his costs of this action.