FEDERAL LAND BANK OF SPRINGFIELD, Plaintiff, v. ALFRED E. SMITH et al., Defendants.

County Court, Wayne County, January 10, 1955.

2

*Charles H. Herrick* and *C. Burton Newman* for plaintiff.

*John W. Brandt* and *John W. Miles* for Alfred E. Smith and another, defendants.

*J. S. Albright* for Central Trust Company of Rochester, defendant.

TABOR, J. This action was brought by plaintiff to foreclose a contract dated September 13, 1950, covering the sale of a farm in the town of Huron, by plaintiff to Alfred E. Smith and Marybelle S. Smith, his wife, hereinafter referred to as defendants.

Plaintiff alleges a default by defendants in the payment of installments of principal and interest, fire insurance premiums and taxes under the terms of the contract, and also the cutting and sale of timber from the farm in violation of the terms of the contract.

Defendants Smith and wife by way of an answer and counterclaim, allege that plaintiff through its agents represented the farm in question to consist of 135 acres of land, that they relied on this representation in entering into this contract, and actually a subsequent survey showed only 117½ acres of land, and that defendants then demanded an adjustment or a cancellation of the contract and the return by plaintiff of the payments made on the contract and improvements made to the property, and plaintiff refused such demand, and defendants now elect to rescind the contract, return the premises to plaintiff and be paid $4,546, being the amount of payments made under the contract and improvements made.

This action was tried by the court, a jury having been waived, and is an action in equity.

The contract was executed after the defendants saw a sign on the premises and after they had several conferences with representatives of plaintiff, when a small map of the farm was shown to defendants. It appears that no agent of plaintiff went

with them to examine the property or the boundaries, but defendants viewed the farm and the buildings thereon. The pertinent portion of the description of the premises as set forth in the contract is as follows: "The seller agrees to sell and convey and the purchaser agrees to buy certain real estate consisting of approximately 135 acres, situated in the town of Huron, County of Wayne, state of New York, and described as follows: All of the land, with improvements thereon, located six miles northwest of Wolcott at the end of Dutch Street. It is bounded on the north by Lake Ontario, on the east by marsh lands, on the south by John Mundy, on the west by the lake and marshland."

Considerable testimony was offered upon the trial as to whether defendants cut and removed timber from the farm contrary to the provisions of the contract, which provided that seller's written permission must be obtained before cutting wood and timber except for domestic use. Less than two months after defendants entered into possession, a severe storm blew down many trees in the woodlot on this farm. Mr. Smith talked with Mr. Wiley, the agent of plaintiff, concerning the disposition of this down timber, but no written permission was obtained from plaintiff to dispose of the fallen timber. Smith testified he sold only the logs cut from the trees which went down in the storm, and explained the large sale of logs was due to his having engaged in the timber business off and on during the time he has been on this farm, cutting and buying timber from others, while plaintiff produced testimony indicating that trees other than those which blew down in the storm were cut and sold. The proof offered by plaintiff on this question would at most only indicate that defendants violated one of the provisions of the contract, since there is no proof of the number of trees cut down, if any, and no proof of the value thereof. I do not deem it necessary to decide whether the trees which were felled by an "Act of God" then were a matured crop, and who had the right to gather or harvest the same.

Plaintiff further claims that this was a sale in gross or bulk and not at a price per acre, while defendants claim there was a material misrepresentation as to the acreage by plaintiff's agents which they relied on, that if they had been informed as to the correct acreage, they would not have entered into this contract.

I am unable to find from the evidence in this action that this was a sale in gross. The word "approximately" as used in this contract with relation to acreage, or the words "more or

less ", or " by estimation ", do not, standing alone, constitute a sale of land in gross or bulk. The facts affirmatively show a mutual mistake of the parties as to the quantity of land which commenced with the initial negotiation between the parties and continued until the contract of sale was executed and for about two years thereafter. This mistake was an essential and material element of the contract, since the deficiency is approximately 13%. Assuming the word " approximately " did not appear in this contract, the facts here would warrant the interposition of equity. One of the leading cases on the question here presented is *Hill* v. *Buckley* (17 Ves. 394, 400), cited with approval many times by the courts of this State, where a vendee brought an action in equity against a vendor for specific performance of a contract for the sale of land, and asked for an abatement for the deficiency in acres stated in the contract. The relief was granted, and the pertinent part of the opinion is as follows: " When a misrepresentation is made as to quantity, though innocently, I apprehend, the right of the purchaser to be to have what the vendor can give; with an abatement out of the purchase-money for so much as the quantity falls short of the representation." And the court adds, " That is the rule generally; as, though the land is neither bought nor sold professedly by the acre, the presumption is, that in fixing the price regard was had on both sides to the quantity, which both suppose the estate to consist of." Acreage has been considered an essential element in the purchase of farm land and affects the consideration agreed to be paid in the absence of special facts or circumstances. (*Paine* v. *Upton*, 87 N. Y. 327; *Oakes* v. *De Lancey*, 133 N. Y. 227; *Belknap* v. *Sealey*, 14 N. Y. 143.) It is not answered by showing that defendants made little use of the tillable land, since defendants were entitled to substantially the acreage called for by the contract. There is no evidence of or claim that plaintiff's agents intentionally misrepresented the acreage. Vendees on discovering this deficiency could have elected to rescind or stand upon the contract with a proportionate abatement in price regardless of whether the contract is executory or executed and a deed given. (*Paine* v. *Upton, supra*; *Moffett* v. *Jaffe*, 61 Misc. 584.)

The defendants are not barred from equitable relief by reason of laches. Some time after they took possession of the farm, a tax bill came to them and they noted the difference in acreage as set forth in the tax bill and in the contract. Thereafter, the defendants discussed the acreage variance with Mr. Wiley, plaintiff's agent, and finally asked for a survey which Mr. Wiley

on behalf of plaintiff refused. Defendants had this farm surveyed some two years after taking possession, and at their own expense, and thereafter through counsel demanded a rescission of the contract and were refused. However, while defendants are in my opinion entitled to the abatement of a part of the purchase price, they are not on the evidence entitled to rescission. They bought a farm and took possession knowing or bound to know, since they inspected the farm buildings including the dwelling, the condition thereof, and they cannot now complain of defects in the buildings.

The defendants have had the exclusive use and possession of the premises since about October 13, 1951, and the fact that the farm contains seventeen and one-half acres less land than they bargained for does not relieve them from their failure to make the payments of principal, interest, taxes and insurance called for by the terms of the contract. To permit them to rescind at this time would be inequitable.

Since this farm land and buildings were embraced in one contract for a stated sum of money, it is impossible to determine the amount of the abatement without taking proof. The proportionate part of the purchase price which was represented by the buildings in my opinion is not changed because of the mutual mistake as to the acreage, hence the abatement must be determined after the purchase price of $8,500 is allocated as to the land and as to the buildings, as of the date of the delivery of the contract, and when the amount of abatement is determined it will be deducted from the purchase price and an adjustment made in interest.

At the close of the proofs it was stipulated that further proof might be offered by the parties, if requested by the court as to the value of the farm. The parties may either stipulate the amount of the abatement or offer proof before this court at 2:00 P. M., on January 18, 1955. Proof will be received only for the purpose of determining the proportionate value of the land as to the total purchase price of $8,500 and the amount due plaintiff, after which a judgment of foreclosure and sale may be submitted for signature on notice in accordance with this decision and the amount due plaintiff after the amount of the abatement is determined and allowance for interest thereon.