NASHA HOLDING CORPORATION, Respondent, v. RIDGE BUILDING CORPORATION, Appellant, Impleaded with EDWARD H. EPSTEIN, Respondent.

Second Department, June 17, 1927.

**Vendor and purchaser — action to recover down payment on theory of defective title — description in contract specified two courses as ending at top of beach four feet above high-water mark — contract stipulated that land was subject to encroachment by waters of Raritan bay — length of courses ending above high-water mark show that they actually end many feet below high-water mark — said four-foot strip has been washed away — claim to alleged four-foot strip is not defect in title — when strip was washed away ownership ceased — diminution of one-half acre in quantity of property not ground for refusing to accept title — plaintiff's assignor, original vendee, was properly made defendant — under Civil Practice Act, § 271, vendor had right to plead counterclaim for specific performance against original vendee.**

The plaintiff brought this action to recover the down payment on a contract for the sale of land which was assigned to it by the individual defendant, and based the action on an alleged defect in the title.   The defect consists of a supposed claim by the heirs and representatives of the owner who conveyed the property in 1867.   The contract in question describes the property according to the description in the deed given in 1867 and in that description two of the courses are defined as ending at the top of the beach four feet above high-water mark, so that the strip four feet wide between high-water mark and the property in question was not conveyed.   The contract, however, provides that the land to be conveyed is subject to encroachment by the waters of Raritan· bay. While the two courses specified are stated to end four feet above high-water mark, actual measurements testified to by an engineer showed that one course ends seventy-six feet and the other twenty feet below high-water mark.   The

alleged four-foot strip, therefore, has been washed away by the action of the waters and title thereto has been lost to the heirs and representatives of the original owner and the present owner of the property in question has gained the right of riparian ownership.

The mere fact that the heirs and representatives of the original owner of the four-foot strip may make some claim does not show that the title is defective, because the basis for any claim of that kind is so unsubstantial as to be unworthy of any consideration.

The plaintiff further contends in support of the right to reject the title that there is a diminution in the quantity of the land by about one-half acre. The land contracted to be conveyed is sold in bulk and the acres specified in the contract are subject to the condition " more or less." Under the circumstances the alleged shortage in quantity cannot be the basis for refusing to take title.

The original vendee, plaintiff's assignor, was properly made a party defendant, and, under section 271 of the Civil Practice Act, the vendor had the right to plead a counterclaim against said defendant for the specific performance of the contract.

APPEAL by the defendant, Ridge Building Corporation, from a judgment of the Supreme Court in favor of the plaintiff and the defendant Edward H. Epstein, entered in the office of the clerk of the county of Richmond on the 23d day of February, 1927, upon the decision of the court rendered after a trial at the Richmond Special Term.

The judgment awards the plaintiff the sum of $10,000, a down payment on the purchase of real estate, together with $468.50, expenditures incurred in the examination of the title, and also dismisses the appellant's counterclaim as against the defendant Edward H. Epstein for the specific performance of the contract of sale.

*Harry G. Anderson* [*Louis J. Moss* with him on the brief], for the appellant.

*Chase Mellen,* for the plaintiff, respondent.

*Raphael P. Russakow,* for the defendant, respondent.

KAPPER, J. On October 16, 1925, the defendant Ridge Building Corporation entered into an agreement in writing with the plaintiff's assignor, the defendant Edward H. Epstein, who has been impleaded herein as a defendant, for the sale and purchase of two tracts of land on Staten Island, Richmond county. The two tracts are bounded and described in this contract, but we are concerned with only the first described parcel, as to which the claim was made upon the trial that there was such a defect in the title as to justify the plaintiff, as assignee of Epstein, the purchaser, in rejecting the title. The contract declared the property as " being the same premises conveyed by Henry Van Name and others to Margaret L. Richardson, by deed bearing date the 5th day of April, 1867, and

Second Department, June, 1927.          [Vol. 221

recorded in the Office of the Clerk of the County of Richmond in Liber 69 of Deeds, Page 467." Then followed the description, which it is undisputed is the same as in the said deed of Van Name and others to Richardson. The contract also contained the following clauses:

" Subject, however, to encroachment by waters of Raritan Bay and to public right of way to so much of the easterly part of the premises hereinabove described as lies within Sprague Avenue. Subject to state of facts that an accurate survey would show. * * *

" The seller agrees to deliver to the purchaser, if requested, [from the seller's vendor] a quit claim deed of all her right, title and interest, if any, in and to any land under water extending from the southerly line of the premises herein described to the present high water line of Raritan Bay."

The description in the contract of the questioned first parcel is as follows: " Beginning at the southeast corner of lands lately conveyed by said Henry Van Name and others to Margaret Butler and by the westerly line of said road or avenue running thence north eighty-seven degrees thirty minutes east fifty-two links or thereabouts to a stake situated a little to the east of the centre of said road or avenue; thence along the same south seven degrees thirty minutes east, fifteen chains fifty-four links more or less to the top of the beach which is understood to be four feet above high water mark; thence along the top of the beach as so understood westerly to lands of Garret Garretson by the top of the beach as aforesaid; thence northerly along the last mentioned land seven degrees thirty minutes west twenty chains more or less to the southwest corner of said lands of said Margaret Butler, and thence along said lands north eighty-seven degrees thirty minutes east six chains and eighteen links to the point of beginning, containing twelve acres, more or less."

From the foregoing description it is apparent that the lands in question did not run to the waters of Raritan bay, but to a point " to the top of the beach * * * four feet above high water mark." It is also apparent that the grantors in the deed from Van Name and others to Richardson were reserving riparian rights; at least, they withheld from the grant a strip along the southerly end of the lands conveyed of a width of four feet above high-water mark.

On the same day on which Van Name and others conveyed to Richardson, namely, April 5, 1867, said grantors signed a paper which was entitled " Memorandum of agreement," reciting that they made such " agreement " with said Margaret L. Richardson, and that said grantors " are the owners in fee of certain lots of

land and beach in the said Town of Westfield situated on Princes Bay, adjoining the southerly boundary of lands this day conveyed to the said Margaret L. Richardson by the parties of the first part and others," and a further recital worded as follows: " And whereas it is well known and understood that the lands on said bay are being graduly (*sic*) washed away by the action of the tide and that the said southerly boundary of the said lands now of the said Margaret L. Richardson is a variable boundary — being four feet above or north of ordinary high waters mark."

The said instrument then proceeds to declare or to say: " It is agreed by the parties hereto that the said Margaret L. Richardson may have and enjoy the right and privilege of erecting hedges or brake water on their said lands and beach for the protection of her said southerly boundary which is understood and agreed herein to be as follows [here followed the understanding of the parties of what constituted the southerly boundary line of the Richardson grant]. It is further mutually agreed between the said parties, that this agreement shall be perpetuate and at all times be construed as a covenant under and running with the lands but no part of the fee of the lands and beach upon which the said hedges or brakewaters aforesaid is to stand or any lands relicted by and in any consequences of such hedges and brakewater shall pass or be ousted in the said Margaret L. Richardson, her heirs or assigns by virtue of these presents. And it is further mutually agreed and expressly understood between the said parties that should Margaret L. Richardson her heirs and assigns fail to erect, keep and maintain such hedges or brake water and the southern boundary line aforesaid become washed away by the action of the tide or otherwise then this agreement to, void and of none effect." (The foregoing quotation is literal.)

The last referred to instrument was not recorded until October 29, 1925, only a short time before this action was commenced. However, that fact is of no importance in the view that I take of this instrument and its effect upon the title offered to the plaintiff and its assignor.

There was called on behalf of the plaintiff and to establish that the four-foot strip was an outstanding claim impairing the appellant's title, Caroline R. Dorsey, who was a daughter of David Van Name, one of Richardson's grantors. With her in court was her sister, a Mrs. Williams, and besides whom she named a Mrs. Ellis as of next of kin of some of the Van Names, and some two or three other persons. She was then permitted to testify, over the objection and exception of the appellant, viz.: " Q. Let me ask you this

16

direct question: In the deed from your father and uncles and others, to Margaret L. Richardson that has been offered in evidence here as Plaintiff's Exhibit 3 occurs a description of the southerly boundary of the property? A. Yes. Q. As along the top of the beach? A. Yes, sir. Q. ' Which is understood to be 4 feet from high water mark? ' A. Yes, sir. * * * Q. Do you and your sisters claim any title to that 4-foot strip? A. Yes."

Whether or not this was objectionable testimony need not be considered, and I shall assume that the Van Name family, or some of them, said or are prepared to say that they have a claim to the four-foot strip. It is proved by a surveyor called by the plaintiff, and undisputed, that the southerly course contained in the description of the parcel in question ran " fifteen chains fifty-four links more or less to the top of the beach, which is understood to be four feet above high water mark; " and that the returning course ran from this " top of the beach " northerly twenty chains. These chains were reduced to feet and should show 1,025 feet on the easterly side of the land and 1,320 feet on the westerly side of the land, and measuring from the northerly boundary to present high-water mark the easterly course reached the water in 949 feet while the westerly course was 20 feet less than the twenty chains described would import. If this means anything at all, it conclusively shows that the southerly end of the parcel now extends into the waters of Raritan bay to the extent of 76 feet on the east and 20 feet on the west beyond high-water mark. And then the question, easily answered, is, what has become of the four-foot strip? It has gone the way of so much of the southerly end of the parcel in question as has been invaded by the encroachment of the waters of Raritan bay. Land encroached upon by navigable waters ceases to belong to the former owner. (Gould Waters [2d ed.], § 155.) To begin with, the four-foot strip never was a part of the title or land contracted to be sold. As stated in the instrument which gave Richardson the right to erect hedges or breakwaters to protect her southerly boundary, it was plainly land " adjoining the southerly boundary of lands this day conveyed to the said Margaret L. Richardson." It may be that this land, consisting of this four-foot strip which Van Name did not convey to Richardson, and which undoubtedly has been lost by submergence, " may be regained by reliction." (*Mulry* v. *Norton*, 100 N. Y. 424, 434.) But that the strip has been lost " by submergence " seems to me to be the only conclusion that can follow from the undisputed evidence in this case. The effect has been to give to Richardson and her grantees a riparian right not theretofore possessed. We are not informed of the length of

time it has taken to obliterate the four-foot strip; but that this obliteration has been by the gradual encroachment of Raritan bay may properly be assumed in the light of the contract which subjected the title to the encroachment of said waters. The result is, as already stated, that the plaintiffs have gained a riparian right whilst the owners of the four-foot strip have suffered a loss by its submergence. "They [the owners of the four-foot strip] would be entitled to whatever should be gained from the sea by alluvion or dereliction, and their title was liable to be lost by the advance of high-water mark, bringing their lands within the ebb and flow of the tide." (*Mulry* v. *Norton, supra,* 433.)

The learned Special Term entertained the opinion that "the claim" of Mrs. Dorsey and possibly other heirs of Van Name to the four-foot strip which has been characterized as "variable" rendered the title doubtful or unmarketable because such claim might ripen into a law suit. It is obvious that this claim cannot throw the four-foot strip, now submerged, onto lands which the claimants' ancestors conveyed without any such reservation. None of the Van Name heirs would be permitted to shorten the specific northerly and southerly courses of the grant to Margaret L. Richardson (under whom the appellant claims) so as to relocate the four-foot strip into and upon the lands granted to her by their ancestors. Something more than a mere assertion of a right is essential to create an unmarketable or doubtful title. "The mere making of a hostile claim against a person in possession of real property does not make the title of the possessor unmarketable, for the hostile claim may arise from a basis so unsubstantial as to be unworthy of serious consideration." (*Todaro* v. *Somerville Realty Co.,* 136 App. Div. 767, 769.) In my opinion the case below was erroneously decided upon the proposition that there was an outstanding claim which clouded or impaired the title in question.

Realizing the apparent weakness of this proposition, the respondents, in support of the right to reject the title, *now* assert that there is a diminution in the quantity of property agreed to be conveyed from that which could actually be tendered. This is predicated upon the proof of the surveyor which showed the respective shortages in the southerly and northerly courses on the easterly and westerly lines of the property when carried to the water edge. It is claimed by the respondents that this shortage amounts to "about" one-half acre. It must be stated that this question of shortage in quantity was not made a ground for rejection upon the trial, the respondent standing squarely upon the alleged defect presented by the claimed existence of the four-foot strip adjoining the southerly boundary of the lands in question. The contract in suit was for the con-

veyance of the two tracts or parcels for the lump sum of $115,000. It did not provide for a specific sum per acre, per lot, or for either of the two tracts, that is, a specific sum for each. It was one lump sum for the entire property. That the parties had clearly in mind the probability *and the fact* that some of the land had been lost by submergence, there was the explicit stipulation in the contract that the conveyance was subject " to encroachment by waters of Raritan Bay." While the descriptions specified the acreage in each tract, this was coupled with the qualification that such tracts contained such acreage " more or less." There is no claim that there was any mutual mistake as to quantity nor was the case tried on any such theory. In my opinion, " the risk of the quantity was one of the elements of the contract." (*Paine* v. *Upton*, 87 N. Y. 327, 334.) The sale was what has been over and over again characterized or described as one " in bulk " or " in gross." There was no negotiation by acre, or lot or parcel, as already stated. Even where a mutual mistake as to the quantity of the land sold may afford ground for equitable relief, such relief " will not be granted as a general rule where it appears that the parties intended a contract of hazard, as where the sale is a sale in gross and not by acreage or quantity as a basis for the price." (27 R. C. L. 354, 355.)

In the circumstances presented by this record I am of the opinion that the alleged shortage in quantity should not be permitted to prevail as a basis for refusing to take title.

The point is made on behalf of the respondent Epstein, the vendee named in the contract, that he should not have been brought in as a party defendant, against whom the appellant's counterclaim for specific performance is directed. I think section 271 of the Civil Practice Act is broad enough to justify the practice of bringing in the vendee named in the contract and by affirmative claim in the nature of a counterclaim, seeking a judgment for specific performance against such vendee. Moreover, specific performance may be decreed against the assignee of a contract on a counterclaim of the vendor where the assignee has brought an action to recover the amount of the down payment. (*H. & H. Corporation* v. *Broad Holding Corporation,* 204 App. Div. 569.) The power of the court to bring in new parties, in this case the vendee named in the contract whose liabilities to the vendor remained fixed and determined notwithstanding the assignment of the contract, seems to be of a scope wide enough to meet the situation of which the respondent Epstein, without merit, complains. (See, also, Civ. Prac. Act, § 211.)

For the foregoing reasons, the judgment should be reversed upon

the law and the facts, with costs, and judgment directed in favor of the defendant Ridge Building Corporation and against both respondents for the relief demanded in the counterclaim. Findings and conclusions of law inconsistent herewith should be reversed and new findings and appropriate conclusions of law should be made on settlement of the order of reversal, and on notice.

KELLY, P. J., MANNING, LAZANSKY and HAGARTY, JJ., concur.

Judgment reversed upon the law and the facts, with costs, and judgment directed in favor of defendant Ridge Building Corporation and against both respondents for the relief demanded in the counterclaim. Findings and conclusions of law inconsistent herewith reversed and new findings and appropriate conclusions of law made. Settle order upon notice.