James C. O’Brien, J.
Plaintiff and defendant entered into a written agreement on June 14, 1963 for the purchase by the plaintiff and the sale to him by the defendant of a vacant lot on the south side of Hoyt Place, in the City of Rochester, New York. The purchase price was $4,000.
The controversy between the parties and this resulting lawsuit arise from the language used in their written agreement with respect to a description of the property. The pertinent part of the agreement reads as follows: “ I agree to purchase the following property situated in the City of Rochester, on the south side of Hoyt Place consisting of a part of Lot 1 and all of Lot 2 of the F. E. Wyatt Subdivision and comprising a parcel of land fronting approximately 80 feet on Hoyt Place and approximately 300 feet in depth throughout. Said parcel to include all of the land owned by John W. Wright on the south side of Hoyt Place.”
Plaintiff takes the position that the dimensions called for by the agreement were 80 feet front by 300 feet in depth, and that since the dimensions of the land owned by the defendant were less than set forth in the agreement, plaintiff should have specific performance with an abatement in the purchase price. Defendant denies this and in his original answer asked for specific performance of the contract at the price set forth in the written agreement.
The real property in question consists of an irregular shaped lot which is 79.88 feet front on Hoyt Place and 60 feet wide in the rear; 264.17 feet deep on the east line and 231.39 feet deep on the west line.
The reason for the difference between the front and rear lines is that a small part of Lot 1 of the F. E. Wyatt 'Subdivision wias included in the frontage.
This small section of Lot 1 commenced at a point on Hoyt Place more than 13.90 feet from the west line of Lot 2 of the F. E. Wyatt Subdivision and ran in a general northerly direction 11.41 feet to a point and then runs in a general westerly direction 13.90 feet to the west line of said Lot 2.
Concededly the lot does front approximately 80 feet on Hoyt Place since its frontage is precisely 79.88 feet and an approximation could not be much more accurate. When the contract was made I find that both parties realized that approximations only as to the frontage and depth were necessary and that that was *1027 the reason why, in the contract the final sentence which appears there was included, viz.: ‘ ‘ said parcel to include all the land owned by John W. Wright on the south side of Hoyt Place.” This language explains the somewhat ambiguous “ approximately 80 feet on Hoyt Place and approximately 300 feet in depth throughout ”, which appears in the contract. Plaintiff’s attorney drew the agreement and by using this language it seems to me clearly defined what he wanted to purchase and what the defendant was obligated to sell. The plaintiff was interested in the land owned by the defendant on the south side of Hoyt Place. The precise dimensions of the lot were incidental.
The only unambiguous provision in the part of the contract with which we are concerned is the last sentence of the first paragraph wherein, as a concluding statement, the plaintiff agrees to buy and the defendant agrees to sell all the land owned by the defendant on the south side of Hoyt Place.
Plaintiff’s attorney, Mr. Williams, was a witness. His testimony tends to establish as correct, my conclusion, that the plaintiff’s desire and intent was to purchase whatever land the defendant owned on the south side of Hoyt Place. Mr. Williams’ testimony showed that he drew the purchase offer from a plat book which showed the property to be less than 300 feet deep. As I recall the testimony, plaintiff’s attorney also testified that the plat book showed the lot as it was before any part of the land had been taken by the State of New York for the purpose of building an expressway and it appears that immediately before he drew the contract that part of the land had been taken by the State. While the contract was being negotiated plaintiff’s attorney acted as plaintiff’s agent and not as his attorney. Notice to the agent is notice to principal and, therefore, it must be held that plaintiff knew (because his agent was so informed) that he was getting something less in dimensions than the written agreement provided.
Plaintiff’s counsel argues that this knowledge cannot be imputed to him since knowledge or notice to an attorney is not imputable to the client. In support of this plaintiff cites Kountze v. Helmuth (140 N. Y. 432). This case was concerned with an attorney-client relationship having to do with an examination of title to real estate. It required that the attorney render an opinion and give advice in his professional capacity.
In our action there was no such requirement on the part of the attorney. He negotiated the contract for the plaintiff and simply acted as a scrivener of the purchase offer. He was required to write down only what the plaintiff wished to purchase. At the time the purchase offer was written I believe *1028 that neither one of the parties nor plaintiff’s attorney knew the exact dimensions of the lot which defendant owned and the plaintiff and his attorney really did not seem to care or to be concerned about the exact dimensions. The plaintiff was interested in buying the land owned by the defendant and all that defendant owned on the south side of Hoyt Place and that is what the plaintiff contracted for and what the defendant offered to convey. I can find no basis for an abatement of the purchase price.
Another obstacle confronts plaintiff in his demand for abatement. He failed to offer satisfactory proof as to what the abated price should be.
Had the purchase offer been one where the property was sold at a set price per square foot or per acre, no such proof would have been needed. (See Mills v. Kampfe, 202 N. Y. 46; Paine v. Upton, 87 N. Y. 327.)
However the claim here is that there is less square footage than contracted for but no evidence is offered as to how the value of the lot is affected by this shortage. The contract fixes a price for the bulk piece of property and under such circumstances there must be some proof as to the proposed abated price. (See Nasha Holding Corp. v. Ridge Bldg. Corp., 221 App. Div. 238; Hunt v. Wall, 211 App. Div. 856; Friedman v. Baron, 223 App. Div. 851.) To divide the purchase price into square footage would be of no aid since there could be many other factors which would affect the value of the smaller lot. It is not inconceivable that a smaller lot, under certain circumstances, might be more valuable than the larger.
Defendant during the trial moved to discontinue his counterclaim for specific performance at the contract price. This motion was granted. He later moved to amend his answer to allege a counterclaim for recision. On this motion I reserved decision. I conclude that this motion was not timely made nor did the defendant’s proof show anything which warrants a recision. Accordingly the motion is denied with an exception to the defendant.
Plaintiff also moved to amend his pleading after the defendant’s counterclaim had been abandoned. Plaintiff asked permission by his amendment to include a cause of action for specific performance at the full contract price, i.e., if he could not secure a deed at an abated price, he would pay the full price and in any event wanted a judgment for specific performance. Decision on this motion also was reserved and is now denied. I feel that this application to amend, like the application of defendant to insert a new counterclaim, was not timely made. Moreover *1029 the plaintiff’s proof did not show that on the closing date he was ready, willing and able to perform at the full contract price. On the contrary the proof indicates that the plaintiff refused to perform on those terms but was willing to pay only the abated price computed on a square footage basis. Therefore, he is not entitled to specific performance even if his motion to amend were granted.
Finally I conclude that the complaint must be dismissed on the merits because plaintiff has not proven a cause of action.